Bartley, C. J.
This is a bill in chancery to enjoin the corjoorate authorities of the village of Gallipolis from inclosing the “ Public Place,” or “ Public Square ” of the village, for the purposes of improvement and ornament. This public ground, as it appears,never had been previously inclosed, but had been used for over fifty years as an open public common, and to some extent as a public highway for the passage of carts, drays, teams, etc. The complainant, *who is a dealer in merchandise, produce, etc., owns and occupies a lot, with valuable improvements thereon, fronting upon this public place. And he avers that the proposed inclosure of this ground will greatly damage him in the value of his property, and also in his business, by preventing teams, carts, etc., from taking the nearest route in going to and from his place of business to the public landing on the river, and comjDelling them to pass round by the streets ; also by obstructing the use of his place for horse-racks, the placing of articles, and the convenient accommodation of teams, etc.
The answer of the defendants admits that the authorities of the town are proceeding to improve this public ground by an inclosure for the use and benefit of the citizens of the village, but denies the ■equity of the bill, and insists on the right of the public authorities of the village to inclose and improve the public square, etc.
The fact of the dedication of the public ground in question to the use and benefit of the inhabitants of the village of' Gallipolis fully appears; and it was so adjudged by the .Supreme Court of this state in Le Clercq et al. v. The Trustees of the Town of Gallipolis, 7 Ohio, 217. But the extent and purpose of such dedication constitute the ground of controversy in this case. It is claimed, on the part of the complainant, that at least one of the purposes of the dedication was that of a public highway, to the fullest extent; and further, that the place was made subject to use for teams to stand and turn upon, for horse-racks, and for the deposit of articles. On the other side, it is claimed that the dedication does not extend to the purposes of a public highway, or of any particular kind of business, but that the place is subject to be controlled and improved, by the public authorities of the village, for the appro *96 priate use and purpose to which the public squares of towns and cities are usually appropriated.
It is certainly true that some dedications to the public are for purposes very distinct from others, and that the subject *of each must be considered and used with reference to the special purpose for which the dedication is made. It was said by the Supreme Court of the United States, in the case of the City of Cincinnati v. White, Pet. 431, that streets in a town or city may require a more enlarged use of the land, in order to carry into effect the purposes intended by the dedication, than may bo necessary in an appropriation even for a highway in the country. Although the manner of dedication, and the principles and rules of property applicable to public highways and public squares, may rest upon the same ground, yet the use and purpose of each is different and clearly distinguishable from the other. The easement of a public highway, the legal incidents of which are well defined, comprehends the rights of all individuals in the community, whether upon foot, on horseback, or with any kind of vehicle, to pass and repass, together with the right of the public to do all-the acts necessary to improve it, and keep it in repair. But the use and beneficial purposes of a public square, or common, in a village or city, where no special limitation or use is prescribed by the terms of the dedication, are entirely different from those of a public highway. Such a place, thus dedicated to the public, may bo improved and ornamented for pleasure-grounds and amusements for recreation and health; or it may bo used for the public buildings, and place for the transaction of the public business of the people of the village or city, or it may be used for purposes both of pleasure and business. Any such appropriation may be made under the direction and control of the municipal authorities; but the place must, for the purposes of the dedication, remain free and common to the use of all the public. And an appropriation to the purposes of a mere public highway, or to the private and individual use and purposes of any lot-owner or particular class of lot-owners in the village or city, of ground dedicated as that in question, would be inconsistent with the objects of the dedication, and a plain diversion' from its appropriate and legitimate uses. This is consistent with the doctrine of *the case of Post v. Pearsall, 20 Wend. 111, wherein the purposes and uses to which the principle of dedication will apply, are extensively examined. In the Common *97 wealth v. Alburger et al., 1 Whart. 469, a very full inquiry was instituted into the rights and uses connected with certain public squares in the city of Philadelphia; and the court, by Sergeant, Justice, say: “When property is dedicated or transferred to public use, the use is indefinite, and may vary according to circumstances. The public not being themselves able to manage or attend to it, the care and employment of it must devolve upon some local authority or body corporate as its guardian, who are in the first instance to determine what use of it, from time to time, is best calculated for the public interest, subject, as charitable uses are, to the control of the laws and the courts, in case of any abuse or misapplication of the trust. The corporation has not the right to these squares so as to be able to sell them, or employ them in a way variant from the object for which they were designed.”
In the case before us, the terms of the dedication are expressed in a resolution adojited by the proprietors of the village of G-allipolis, at a meeting held by them on the 16th day of December, 1795, which was originally in the French language; but being1 translated into the English language is as follows:
“ Besolved (or agreed), That, for the public good (or convenience) and the interest of the inhabitants, the streets and ‘ La Placer shall remain free, and never be alienated or obstructed on the bank of the river by any kind of buildings.”
Although the streets and “La Place” were coupled together in this resolution, it by no means follows that the dedication of each was for the same purpose. Each had its appropriate object and use. It is expressly provided that the street and-“Da Place” should never be alienated, and that each should remain free to the people of the village in its appropriate use. This was not to any extent inconsistent with *the terms of a general dedication. No special limitation was imposed in the terms of the dedication, except that the public grounds thus dedicated should never be “ obstructed on the bank of the river by any kind of buildings.” And it is not even claimed that any attempt is made to interfere with this restriction. With this single exception, the dedication of “ La Place ” was made for the usual and ordinary purposes of a public square; and therefore, as such, under the control of the authorities of the peojfie of the village, and liable to be appropriated either to the purposes of a public common, or of the pubíie business of the people of the village, or to be improved and orna *98 mented for pleasure grounds for health and recreation, at the discretion of the public authorities.
It is alleged in the bill that the complainant, when he purchased his lot from the proprietors of G-allipolis, paid more for it in consequence of its being situated adjacent to this public ground, etc. If this were go, it was not because he obtained any private interest or use in the public square, but simply because of the advantage of the proximity of his location to it.
It is claimed, on behalf of the complainant, that the right of the people of the village of G-allipolis to control this public ground within the terms of the dedication, is limited by the long continued use of it as an open public common; or, at least, that this circumstance gives an interpretation to the terms of the dedication, which is conclusive against the corporation. We know of no principle of law which will sustain any such defense in this case. The fact that this ground was left open, and used as an uninclosed public common for many years, was not inconsistent with the terms of the dedication, and could not lay the foundation for any presumption against the right of the village to use the ground in ,any other manner deemed more advantageous or preferable within the terms of the dedication. No exclusive continued and uninter rupted adverse possession by any individual in any portion of this public common, by which any ^private right was acquired, ■could bo set up. .Neither can any presumption arise in favor of a •dedication to the mere purposes of a public highway from the fact •of its being uninclosed for many years, and to some extent passed •over by the traveling public, as any uninclosed public common would always be liable to be used. Streets or public highways are .admitted to exist on each side of, or around, this public ground. When uninclosed, therefore, the public square would, of course, be -more or less passed over by persons traveling the streets. But the public authorities of the village, as the mere trustees of the public •property, would not be competent, in derogation of the terms of the dedication, to convert this public common into a highway or street; and much less could any such presumption of such dedication arise from any. such use as that here claimed to have •existed.
It is also claimed, on behalf of the complainant, that the au-thority of the defendants to improve this public ground by any .kind of inclosure, is restrained by a provision in the act incorpo *99 rating the town, which, among other things, confers the power “to regulate, improve, and keep open, unobstructed, and in repair, the river and creek bank in and around the town, and the landings, commons, streets, alleys, lanes, and passages within the corporation,” etc. This provision of the law relating to the condition in which the landings, commons, streets, etc., should be kept open, has' reference of course to the appropriate use and object to which each was respectively dedicated. Each is required to remain open and unobstructed, so far as requisite to accomplish the obj ect for which, it was designed. As the public square was not dedicated for the purpose of a public highway, such an inclosure and improvement of it, as would prevent its being used as a highway, would not be unauthorized, provided it was left free or open and unobstructed to the people of the village, for the purposes of amusement and recreation, or as a place for the transaction of the public business of the ^village, or any other use within the terms of the dedication. Some kind of an inclosure, indeed, may be found not only useful and convenient, but highly important, and even essential to the accomplishment of its true objects in the best manner.
It does not appear, therefore, that the defendants were engaged in any unlawful and improper proceedings, to restrain which the interposition of a court of chancery was called for. The bill is dismissed, with costs.